HALL & OTHERS, Plaintiffs in Error, *vs.* HARRISON, Defendant in Error.

1. An administrator appointed in another state may maintain a suit in this state, upon a judgment recovered by him in his representative capacity in the former state against a party who was a citizen of that state at the death of his intestate.
2. A statement in a petition that the record upon which the suit is founded is filed with it, does not make the record a part of the petition, so that it can be noticed on demurrer.

*Error to St. Louis Court of Common Pleas.*

William Hall and James Hall commenced a suit in the Court of Chancery of the state of New York, against James Harrison and others. Harrison appeared to the suit and answered the bill. Pending that suit, James Hall died, and Lewis Hall, Benjamin F. Morgan and Maria Hall, as his administrators, were substituted in his place as complainants. The suit resulted in a decree in favor of the complainants against Harrison for the payment of a sum of money. The parties, com-

plainants in that suit, instituted an action by petition in the St. Louis Court of Common Pleas, against Harrison, to recover the amount awarded by the decree. The petition stated that an authenticated copy of the record of the proceedings, which resulted in the decree, was filed with it. Harrison demurred on the ground that the plaintiffs, described as administrators of James Hall, showed no authority to sue as such under the laws of this state. The court below sustained the demurrer, and gave judgment for the defendant. There was no allegation in the petition as to the citizenship of Harrison at the death of James Hall.

*R. M. Field,* for plaintiff in error. Administrators, having recovered a judgment in another state in their representative capacity, can sue upon that judgment in this state in their own right; and the statement that they are administrators is mere description. Several early English cases sustain the decision of the court below. These cases are: Hitchcock's case, Cro. Eliz. 327. S. C. Saville, 130. Hargrave's case, 5 Co. 31. S. C. Cro. Eliz. 711. *Carew* v. *Broughton,* Lane, 79. *Riche* v. *Franke,* 2 Brownl. 202. *Paule* v. *Moodie,* 2 Rall's Rep. 132. *Reynell* v. *Longcastle,* Cro. Jac. 545. *Townley* v. *Steele,* Hutton, 78. *Martin* v. *Hendley,* Styles, 232. *Glover* v. *Kendall,* 1 Lutw. 369. *Brookes* v. *Crooke,* 1 Shower, 55. *Waite* v. *Briggs,* 1 Ld. Raym. 35. But these cases have all been since overruled. (*Crawford* v. *Whittall,* Douglass, 4, note. *Bonafous* v. *Walker,* 2 D. & E. 226. 1 Williams on Executors, 572.) The following American cases were cited : *Talmage* v. *Chapel,* 16 Mass. Rep. *Brodie* v. *Brickley,* 2 Rawle, 431. *Biddle* v. *Wilkins,* 1 Peters, 686. *Trecothick* v. *Austin,* 4 Mason, 16. *Stewart* v. *Richey,* 2 Harrison's (N. J.) Rep. 164. *Savage* v. *Meriam,* 1 Blackf. 176. Story's Conflict of Laws, § 522. *Lecompte* v. *Sargeant,* 7 Mo. Rep. 352. *Thomas* v. *Relfe,* 9 Mo. Rep. 377. *Abbot* v. *Miller,* 10 Mo. Rep. 141. *Harney* v. *Dutcher,* 15 Mo. Rep. 89. A decree of a court of equity stands upon the same footing as

Hall *v.* Harrison.

a judgment of a court of law. (*Penington* v. *Gibson*, 16 Howard, 65.)

*Geyer & Dayton*, for defendant in error. 1. The petition discloses the relation of the parties who profess to be administrators of James Hall, to the money sought to be recovered. Any money recovered would be assets in their hands, which cannot be withdrawn from this state but by the authority of its laws, and those laws require an administration by persons appointed for that purpose within the state. (R. C. 1845, p. 55 *et seq.* *McCarty* v. *Hale*, 13 Mo. Rep. *Spraddling* v. *Keeton*, 15 Mo. Rep. *Lee* v. *Harris*, Brayton's Rep. 93. *Thompson* v. *Wilson*, 2 N. H. Rep. 231. Toller's Executors, (2d Am. ed.) 450. R. C. 1845, tit. Administration, art. 6, § 19, 22, 23, 24, art. 1, §43; tit. Judgments, § 16. Practice at Law, art. 5, § 8, 9 *et seq.* Story's Conflict of Laws, § 513, 523. 1 Greenleaf's Ev. § 544. 1 Johns. Ch. Rep. 153. 4 Gill & J. 332. 3 Mass. 304, 509. 9 Mass. 467.) 2. The record upon which this suit was founded and which was filed with the petition, shows no final decree.

LEONARD, Judge, delivered the opinion of the court.

1. This case has been submitted to us upon written arguments, and the counsel seem not to have entirely concurred in their views of the questions of law proper to be discussed for the decision of the cause.

The plaintiffs labor to establish as a general proposition that, if an administrator recover a judgment upon a cause of action belonging to his intestate, he may afterwards sue on it in his own name without any reference to his representative capacity.

The defendant, assuming that the debtor was a citizen of this state when the intestate died, insists that our laws recognize no foreign testamentary jurisdiction over the debt, and that it must be collected by a home administrator, and administered here, at least until the claims of our own citizens are satisfied; and that no matter what effect the laws of New York or the

common law may impute to the judgment, the foreign administrator cannot be allowed to defeat the policy of our own laws, by withdrawing in this manner the fund from the jurisdiction of our tribunals.

There seems to be no doubt of the correctness of the plaintiff's position as a mere question of common law. The old cases, in which it was holden that an administrator could not sue in his own right upon a judgment recovered by him as administrator, are overruled, and it is now settled that he may do so. (*Bonafous* v. *Walker*, 2 Term Rep. 126. *Crawford* v. *Whittall*, Doug. 4, n. 1. 1 Wil. on Executors, 753. *Talmage* v. *Chapel*, 16 Mass. 71. *Biddle* v. *Wilkins*, 1 Peters, 686. 1 Williams on Executors, 748, note *u*, 753.)

None of the cases, however, we think, touch the point now made by the defendant. They declare the effect under the local law of a judgment recovered by an administrator, but do not pass on the question of the testamentary jurisdiction of one country over debts existing in another, and we do not see how this point can be raised upon the record now before us. Admitting that our own laws require us to declare that the state of New York had no testamentary jurisdiction over the debt now in controversy, if the debtor were a citizen of this state when the creditor died, there is yet nothing in this record disclosing that fact. If we are to infer that the defendant is a citizen of this state because he is sued here, we may infer that he was a citizen of New York when he was sued there. In the absence of all proof, however, our duty is to presume that the court in New York exercised such jurisdiction as it lawfully had, and then this judgment must be taken *prima facie* to vest in the plaintiffs a title to the money recovered, for which they may sue in their own names in our courts.

Let it be understood, however, that we express no opinion upon the merits of the defence set up by the defendant, which may come up hereafter, when all the necessary facts shall be before the court. Yet, it may not be improper for us now to make a remark upon the subject, without at all committing

ourselves to any opinion, until the question shall be properly presented for our judgment.

It is generally said that debts have no locality, but, following the person of the owner in point of right, are disposable of like other personal property, according to the law of the domicil. (Story's Conflict of Laws, § 376, 380, 383, 397, 398, and cases there cited.)

In determining, however, the question of testamentary jurisdiction over movables, corporeal and incorporeal, (I refer to the jurisdiction of the sovereign who grants the letters, and not to the jurisdiction of his tribunals under the local law,) reference must necessarily be had to their locality, which, if they be corporeal, is their own position in space, it being that which necessarily subjects them to the protection and power of a sovereign ; but if debts, mere personal rights of action, the locality, to confer jurisdiction, it would seem, ought to be considered the residence of the debtor at the death of the creditor. It is to be remarked, however, that debts are due not only in the domicil of the debtor, but in the domicil of the creditor, and, indeed, when no place of payment is appointed, they are due and may be demanded any where, and if the debtor is found in the country of the domicil of the creditor, he would be suable there, and, it is said, could not defend himself by a plea that he was liable to pay only to an administrator appointed in the place of his own domicil. A voluntary payment, in such a case, to the administrator of the domicil, it is thought would discharge the debt, but Story doubts whether it would protect the debtor in a suit brought against him by an administrator appointed in his own domicil. (Story's Conflict of Laws, § 512 to 517. *Morton* v. *Milne,* 6 Binney, 361.)

What effect each sovereign will give to its own judgments, in cases of this character, is a question of mere local law, but in a conflict of jurisdiction, each government must determine for itself how far, through comity, it will give effect to the judgment of a neighboring state, when the effect will be to contravene its own domestic policy. The question, then, in the

present case, if the debt recovered were due from one of our own citizens, owing no obedience to the laws of New York, is not whether the judgment recovered in New York by the administrator appointed there, has the effect, at common law, of making the debt recovered the property of the administrator, so far as to allow him to recover it at law in his own name, which would be a mere question of local law ; but whether our laws will give a judgment that effect, in reference to assets subject to our own testamentary jurisdiction, and in this indirect manner allow them to be withdrawn from our own control, until the just claims of our own citizens have been satisfied ? In other words, the question upon the case supposed will be, who, according to our laws, shall collect and administer these assets ? May the foreign administrator collect them in our courts upon this judgment, and take them home to be there administered, or must an administrator be appointed here for the protection of our citizens having claims against the intestate ?

It is proper also to remark, that it may be made a question in this case, whether the debtor, after having submitted himself to the jurisdiction of a court in the domicil of the creditor, can make the objection here, and that too, when there is no administrator here demanding of him the fund, which, in the absence of claims here, must go to creditor's domicil for distribution.

2. In reference to the other point made in the cause, we remark that the petition alleges a final recovery for a specific amount, and we do not consider that the transcript of the record of the alleged recovery is made part of this petition, so as to authorize us, by an examination of it, to sustain the demurrer, on the ground that it does not show a final recovery of any specific amount, as alleged by the plaintiffs.

The result is, the demurrer ought to have been overruled, the plaintiffs' case, as stated, entitling them to a recovery. The judgment must therefore be reversed, and the cause remanded ; and the other judges concurring, it is ordered accordingly.